## ACTION TO SUBJECT CREDITS AND PROPERTY TO PAYMENT OF DEBTS.

Common Pleas Court of Hamilton County.

THOMAS J. O'HARA v. ABRAM BELL ET AL.

Decided, April 8, 1909.

*Debtor and Creditor—Proceeds of Building Contracts and Other Property Claimed by Daughter—Savings of Family not Subject to Husband's Debts.*

Where a home but partially paid for stands in the name of a daughter, and it appears that the payments which have been made thereon consisted of small contributions from the wages of the father who worked as a bricklayer, together with savings from ordinary living expenses through many years, due to industry and frugality of the mother and daughter, no analogy is presented to the case of a debtor who makes substantial gifts and allowances to his family beyond their reasonable necessities or daily use, and the property will not be subject to payment of an old claim against the husband; but small sums remaining due on building contracts executed by him and the balance remaining in bank in an account in the name of the daughter, but used in connection with the building contracts, are subject to his debts.

*E. T. Brown* and *Wm. Hartley Pugh*, for plaintiff.
*Philip Roettinger*, contra. ·

HUNT, J.

This is an action brought by Thomas J. O'Hara, a judgment creditor of Abram Bell, to subject to payment of his claim certain credits due to Abram Bell, upon certain building contracts made by him and certain moneys deposited in the Southern Ohio Loan & Trust Company to the account of Nellie

B. Bell, daughter of Abram Bell, and a house and lot in Evanston, the title to which is in Nellie B. Bell, but occupied by her and Abram Bell and his wife.

The daughter, Nellie B. Bell, by way of answer and cross-petition denies that Abram Bell has any interest in any property in her name, and further claims that the credits due to Abram Bell on building contracts are in fact her property and asks that they be so declared.

Abram Bell made an assignment for the benefit of his creditors more than twenty years ago. His assets consisted mostly of real estate appraised at considerable more than his liabilities, but which after protracted litigation were sold by the assignee, leaving a large amount of the debts of Abram Bell unpaid, including plaintiff's claim. Plaintiff reduced his claim to judgment and kept such judgment alive.

Abram Bell was a bricklayer by trade. At the time of his assignment he was doing a large amount of building, mostly on real estate acquired by himself. After the assignment he bought and improved a few pieces of real estate in his wife's name, but on such small margin that no material profit was made. He tried farming near Harrison on a rented farm, and then went back to work at his trade as a bricklayer, at which he earned good day wages. He lived in several places. His wife and daughter cared for the house, and his daughter giving up regular employment to help the mother, earned some money by fine needle work, at which she was an expert. A son lived with them a part of the time both before and after his marriage, paying the mother substantial board. Although the entire family was frugal and industrious, in the course of the dozen years only about $800 was accumulated in the daughter's name. A lot was then purchased at Evanston in the daughter's name for about $1,000, and a house was built on it with the aid of a loan from a building association. Here the family lived for a time, and then the property was sold at a slight profit. Another lot was then purchased in the daughter's name, and a house built thereon with the usual building association assistance, including the father's personal labor. This house is now used as the home for the father, mother and daughter, and is

.the. real estate in controversy in this case. For a time after coming to Evanston the father still worked as a bricklayer at day wages. He soon began to take small repair jobs in his own name, and gradually larger contracts, until in time he took contracts for the whole brick work of a house. The daughter permitted him to use her savings as if they were his own. Many years had elapsed since the assignment. Practically all of the claims of his creditors had been barred by the statute of limitations. The plaintiff's claim was an exception. After Abram Bell began to take contracts in his own name a bank account became necessary. This was opened in the name of the daughter. There is a small balance now to the credit of the daughter in such account. This business was started from the savings of the daughter, but only a few hundred dollars was originally necessary. The business was managed by the father who worked with his men as a bricklayer. It was of very gradual growth and at no time was the investment therein or the margin of profit very large, but in the course of several years the profits, with the daughter's savings, the son's board money and the frugality of the family resulted in the present home, which is worth between five and six thousand dollars, incumbered, however, by a mortgage in a building association for about $2,-500. It represents what a family of three, all of whom were industrious and frugal, could accumulate in a score of years. The contributions thereto by Abram Bell were the result of his daily work as a bricklayer, and were necessarily so gradual and in such small amounts that no separate contribution could have been reached by creditors even if they had attempted so to do. Moreover, except for the frugality and co-operation of the wife and daughter, such amounts would have been spent in ordinary living expenses. The present case, therefore, has no analogy to a case where a debtor makes substantial gifts and allowances to his family beyond their reasonable necessities and daily use. So-called savings under such circumstances have no analogy to the savings of a family in ordinary life from reasonable allowances for family expenses. A debtor's family can be frugal in the expenditure of ordinary and reasonable allowances for household expenses without having their savings subject to the payment of his creditors.

Clear and convincing evidence is necessary to disturb a legal title. In this case there is no such evidence of any of the conditions necessary to be established before a court of equity will subject the daughter's real estate to the payment of the plaintiff's claim. The balance due on the building contracts are in the name of Abram Bell, and applying the same rule of clear and convincing evidence to such accounts the legal title thereto will not be disturbed and they will not be decreed to be the daughter's property. The bank account, although small, is manifestly the proceeds of the building contracts of Abram Bell and is therefore his property and subject to the claims of his creditors.